*New-London,*
July,
1827.

Kline
*v.*
Beebe.

KLINE *against* BEEBE.

The grantee of land, by a quit-claim deed, is a competent witness, in an action of ejectment between other persons, to establish such deed.

In this state, the husband may be tenant by the curtesy of land to which the wife had title, but of which she was not actually seised, during the coverture.

Whether an infant grantor was, at the time of executing the deed, under the government of a parent or guardian, is, upon a given state of facts, a question of strict law, involving only the legal operation and effect of such facts.

At common law, the mother, as guardian by nature or for nurture, has no controul over the estate or contracts of her infant child

In this state, the appointment of guardians having controul over the infant's estate, is regulated by statute; but there is no provision for the appointment of the mother.

A person incapacitated, by statute, to contract, as being under the government of a parent, guardian or master, must be under the *legal* and *actual* government of such parent, guardian or master.

A person under the legal government of a parent, guardian or master, within the statute, must be subject to his controul with respect to the subject matter of the contract.

Where a mother, being a widow, resided at *New-London* in this state; her daughter lived with her until 1790 when she went to the state of *New-York*, and resided there with her sister; and there, in *April*, 1791, when eighteen years of age, she gave a deed of her real estate; it was held, that she was not, at this time, under the actual government of her mother.

A deed of conveyance of real estate, executed by an infant, not under the government of a parent, guardian or master, for a valuable consideration, is not void, but voidable only.

All voidable acts of an infant may be affirmed, or disaffirmed, by him, when he arrives at full age.

There are three modes of affirming the voidable contracts of infants; 1. by an express ratification; 2. by the performance of acts, from which an affirmance may be reasonably implied; 3. by the omission to disaffirm, within a reasonable time.

Where an infant, having executed a deed of conveyance, in 1791, at the age of eighteen years, held the note given for the consideration four years, and then married; her husband held it until her death in 1815, and continued to hold it eleven years afterwards; and, during the whole period, there was no act or expression of disaffirmance, and the grantee was permitted to remain in the undisturbed occupation of the land; it was held, that there was both an *implied* and a *tacit* affirmance.

This was an action of ejectment for one undivided tenth part of a tract of land in *Waterford.*

The cause was tried at *New-London*, *October* term, 1826, before *Hosmer*, Ch. J.

The defendant was in possession, claiming title; and the only question was, whether the plaintiff had title. The plaintiff

claimed title as tenant by the curtesy. He was the husband of

*Patty Kline,* deceased, formerly *Patty Bolles,* daughter of *Deborah Bolles.* The land in question was devised to *Deborah Bolles,* for life, or during widowhood, with remainder to her daughter *Patty. Deborah* lived in *New-London,* from 1782 until her death, in 1815. *Patty* lived with her mother, who was a widow, until the fall of 1790 ; when she went to the state of *New-York,* and resided there with her sister, until the death of the latter. *Deborah* was no otherwise the guardian of *Patty* than as being her mother.

In *April,* 1791, four years before the marriage of *Patty* to the plaintiff, she executed to *Ebenezer Bolles,* for value received, of him, by his promissory note, a deed of quit-claim of the premises, in common form. At this time, she was, according to the plaintiff's claim, only eighteen years of age ; while the defendant claimed, that she was twenty-three.

The defendant offered *Ebenezer Bolles,* the grantee in the quit-claim deed, as a witness, to prove, that *Patty* was of lawful age, when she executed it. The plaintiff objected to his competency, claiming that he was interested in the event of the suit. The Chief Justice overruled the objection, and admitted the witness.

It was not claimed by the plaintiff, that the deed was not for a consideration equivalent to the value of the interest conveyed ; or that the sale had been disaffirmed, by the entry of *Patty,* or of the plaintiff, or in any other manner ; but the note for the consideration was retained by the plaintiff, and is now in his hands ; and the service of the plaintiff's writ was the first attempt to annul the conveyance.

The plaintiff had children by *Patty ;* and was, without question, tenant by the curtesy of the lands whereof she was seised during the coverture.

The Chief Justice directed the jury, that if *Patty* was not a minor, at the execution of the deed, the plaintiff had no title ; as in that event, she was never seised of the premises during the coverture. But if they should find, that she was a minor, at that time, certain questions of law would arise, on which they would receive the direction of the court. 1. It was said, by the counsel for the plaintiff, that the deed was void, on the ground of its being the conveyance of a remainder only. The Chief Justice instructed the jury, there was no difference, in this particular, between the conveyance of the remainder and of

*Neu-London,*
*July,*
*1827.*

Kline
*v.*
Beebe.

the whole fee. 2. It was claimed for the plaintiff, that *Patty,* at the execution of the deed, was under the government of a parent or guardian; and that consequently, by our statute, the deed was absolutely void. The Chief Justice told the jury, that although it was not conformable to his individual opinion, yet the supreme court had held, that the statute alluded to invalidated deeds of real estate, and that such was the law. But he further informed them, that upon the facts proved and admitted, in the case, as before stated, *Patty*, at the execution of the deed, was not under the care of a parent or guardian, within the intendment of the law. 3. The plaintiff claimed, that at common law, the deed was absolutely void, and not merely voidable. The Chief Justice informed the jury, that the deed, at common law, was voidable only ; and, as no act of disaffirmance, by entry, or demand of any kind, had been made; as there had been no expression or act, shewing a dissent to the deed, until several years after *Patty's* death, and then only by the commencement of the present suit ; the conveyance was good at common law.

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial, for the admission of incompetent testimony, and for a misdirection.

*Law* and *Brainard,* in support of the motion, contended, 1. That *Ebenezer Bolles* was an incompetent witness, as he came to support his own title under the deed. [This point was not much pressed.]

2. That whether *Patty Bolles* was under the government of a parent or guardian, when she gave the deed, was a question of *fact*, which the jury had a right to pass upon.

3. That if upon the facts proved and admitted, it was a mere question of *law*, that question was decided wrong. Generally speaking, a person under the government of a parent or guardian, is one *having* a parent or guardian. For this purpose, it is not necessary, that the child should reside constantly in the house of the parent. A son at college, is under the government of his parent. So is a daughter at a boarding-school, or on a visit to her sister. There is nothing in this case inconsistent with paternal authority, on the one hand, or filial obedience, on the other.

4. That there is, at common law, a difference between a quit-claim deed of a remainder, and a deed conveying the fee,

given by an infant: the former being void; the latter, which is a deed of feoffment strictly, in *England*, being voidable. *Jac. Law Dict. tit.* Feoffment. *Carth.* 436. 1 *Swift's Dig.* 128. The deed in question was of a remainder; and though the interest passed, possession, which is essential to a feoffment, could not be given until after the death of the tenant for life.

5. That if this were a deed conveying a fee, still it would be void at common law. The rule of the common law regarding infants, was made for their benefit and protection; and this object is most effectually attained, by considering the contract void. This furnishes a precise and intelligible rule, attended with no difficulty in its application; whereas it has never been settled what is the true ground, upon which an infant's deed is to be deemed voidable only;—whether it depends upon the *solemnity* of the instrument, or the *semblance of benefit* to the infant. In *Hearle* v. *Greenbank & al.* 3 *Atk.* 712. Lord *Hardwicke* said, " that in law there is a *total absolute disability* in an infant, that by no manner of conveyance can he dispose of his inheritance." And again: "An infant is *utterly disabled* by law to convey or transfer his inheritance or freehold to others, during his minority." This is supported by *Co. Litt.* 171. *b. Thompson* v. *Leach*, 3 *Mod.* 296. 310. *Lloyd* v. *Gregory*, *Cro. Car.* 501. *Saunderson* v. *Marr*, 1 *H. Bla.* 75.

6. That the deed was clearly void, by the law of *Connecticut. Stat.* 373. 274. 487. ed. 1808. 1 *Swift's Syst.* 215. *Alsop* v. *Todd*, 2 *Root*, 105. *Rogers & ux.* v. *Hurd*, 4 *Day* 57. 60. *Maples* v. *Wightman*, 4 *Conn. Rep.* 378.

7. That the deed had not been affirmed. Some *positive act* must be done for this purpose; negative acts, or passive acquiescence, not being an affirmance. *Newl. Contr.* 14. 8. And it must be an act equal to the one making the grant. *Jackson* d. *Dunbar & al.* v. *Todd*, 6 *Johns. Rep.* 257.

*Gurley* and *T. S. Perkins*, contra, contended, 1. That by the common law, the deeds of infants, that take effect by delivery, are not void, but voidable only. *Whelpdale's* case, 5 *Rep.* 119. 2nd res. *Perk. sect.* 12. 13. 2 *Inst.* 483. *Zouch* d. *Abbot* v. *Parsons*, 3 *Burr.* 1794. 1 *Bla. Comm.* 466. *Conroe* v. *Birdsall*, 1 *Johns. Ca.* 127. Executors of *Rogers* v. *Berry*, 10 *Johns. Rep.* 132. *Whitney & al.* v. *Dutch & al.* 14 *Mass. Rep.* 457. 462, 3. *Reeve's Dom. Rel.* 250. *Pow. Cont.* 32.

2. That the statute of this state, in force at the time the deed

New-London,
July,
1827.

Kline
v.
Beebe.

in question was executed, did not vary the rule of the common law in relation to this subject. In the first place, the statute meant such contracts only as could be enforced or perfected against the parent or guardian, who authorized and allowed them; but a deed of land could not, in any way, be perfected or rendered binding on the parent or guardian, his consent notwithstanding. Secondly, *Patty Bolles*, in *April*, 1791, when she gave the deed, was residing with her sister in the state of *New-York*, where she afterwards married, and lived until her death in *September*, 1815. She was not, therefore, in any practical or legal sense, under the government of her mother. Indeed, if she had remained in this state, she would not have been under the government of her mother, especially after eighteen years of age ; for unless her mother supported her, she would have no right to her person or her services. *Reeve's Dom. Rel.* 320.

3. That the deed being voidable only, the facts found are a confirmation of it. Confirmation may be either express or implied ; as any act that denotes an intent not to rescind the contract, or permitting the other party to remain in possession.— So where an infant purchaser continues in possession after full age, it is a tacit confirmation. *Co. Litt. 3. a.* So an infant lessee continuing in possession after full age, ratifies the contract, and he is liable for all rents in arrear during his minority. *Ketsey's* case, *Cro. Jac.* 320. So an exchange of lands, by an infant, and possession retained after full age, binds him. *Cecil & al.* v. *Salisbury*, 2 *Vern.* 225. So acquiescence merely, for an unreasonable time, is a confirmation. 1 *Swift's Dig.* 51.

4. That as the deed was not avoided, by the grantor, during her life, the plaintiff cannot avoid it, he not being *privy in blood*. *Whittingham's* case, 8 *Rep.* 84. 2 *Inst.* 483.

5 That the plaintiff is not entitled to recover as tenant by the curtesy, his wife not having had possession in fact of the land during the coverture. Further, as her deed was only voidable, and it was not avoided, during her life, she had no ownership, or right of possession, during the coverture, within the principle of *Bush & al.* v. *Bradley*, 4 *Day* 298. The interest, which the deed purported to release, passed thereby, and vested in the grantee, until avoidance. Executors of *Rogers* v. *Berry*, 10 *Johns. Rep.* 132.

HOSMER, Ch. J. Before I proceed to a discussion of the

controvertible points in the case, I will express an opinion on
some questions raised of no real difficulty.

*Ebenezer Bolles* was interested neither in the immediate re-
sult of this cause, nor in the record, and consequently, was a
legal witness.

The enquiry whether at the execution of the deed in ques-
tion, *Patty Bolles* was under the government of a parent or
guardian, is not, as the plaintiff has contended, a question of
fact, but of strict law. All the facts bearing on the point were
submitted to the jury; and the enquiry raised relates exclu-
sively to their legal operation and effect.

The title of the plaintiff, as tenant by the curtesy, is not de-
fective for the want of actual seisin in his wife. A husband,
in this state, may be tenant by the curtesy of lands, although
his wife was not actually seised, during the coverture. *Bush
& al. v. Bradley*, 4 *Day* 298.

The material enquiry relates to the validity of the deed, ex-
ecuted by *Patty* to *Ebenezer Bolles*, when she was a minor, of
the age of eighteen years.

The plaintiff has insisted, that the grantor was under the
government of a parent and guardian, *Deborah Bolles*, and that
by statute, the deed is absolutely void; that it is also void at
common law; and that it was not ratified or affirmed, by *Patty*,
after her arrival at maturity; nor has it been, by the plaintiff,
since.

The Court has come to the following results: 1. That the
deed in question is not void, by statute, as *Patty* was not under
the government of a parent or guardian. 2. That at common
law, the deed is not void, but voidable only. 3. And that after
the arrival of the grantor at full age, it was ratified and affirm-
ed. It will be my endeavour to sustain these positions.

1. *Patty Bolles* resided at *New-London* with her mother, who
was a widow until the year 1790. She then went to the state
of *New-York*, to live with her sister, and remained there until
her death. In *April*, 1791, when eighteen years of age, she
executed the deed in question, and four years afterwards, was
married to the plaintiff.

It is now insisted, that the above-mentioned deed is absolute-
ly void by statute, because, as it is said, *Patty* was under the
government of her mother.

Before I recur to the law referred to, it will be proper to as-
certain what were the rights of Mrs. *Bolles* over her daughter,

*New-London,*
*July,*
*1827.*

Kline
*v.*
Beebe.

both at common law, and under the statute relating to guardians.

At common law, there are three species of guardians, *viz.* guardians in socage, by nature, and for nurture.

Guardians in socage exist only where an infant is seised of lands held in socage. In this state, there is no such tenure, and there can be no such guardian. In *October,* 1793, the legislature declared and exacted, that every proprietor in fee-simple of lands has an absolute and direct dominion and property in the same. *Stat.* 433. ed. 1808. Our tenure of lands is strictly allodial, not being held of any superior. 2 *Bla. Comm.* 47. 60. The discussion of this point, however, is immaterial, as guardians in socage ceasе, when the child arrives at the age of fourteen years. *Litt. sect.* 123.

Guardian by nature is the father, and perhaps, on his death, the mother. On the part of the father, this guardianship extends to the age of twenty-one years of the child, but to the custody of his person only. *Co. Litt.* 84. *a. Litt. sect.* 123. *The King and Queen* v. *Thorp* & al. 5 *Mod.* 221. S. C. *Carth.* 384. 386. Such guardian has neither possession nor controul of the estate, whether real or personal. *Genet* v. *Tallmadge,* 1 *Johns. Chan. Rep.* 3. *Miles* v. *Boyden,* 3 *Pick. Rep.* 213.— It is asserted, by the late Ch. J. *Swift,* that a mother is never considered as guardian of her children, unless it be of nursed children until the age of seven years. 1 *Swift's Dig.* 50. But upon this enquiry, I think it unnecessary to enter. The material object, so far as this case is concerned, is, to ascertain the rights of the mother, not over the person, but over the estate and contracts of her children.

A guardian by nurture extends only to the person, and determines when the infant arrives at the age of fourteen. 2 *& Rep.* 38. 1 *Bla. Comm.* 461.

From this short view of the subject, it appears, that at common law, the mother of *Patty* had no government over her; at least, in relation to her contracts or estate.

This subject, in *Connecticut,* is regulated entirely by statute. The authority of Mrs. *Bolles* over her daughter, so far as relates to the deed in question, must be tested by the act of *May,* 1797. By this law, it is enacted, that when it shall so happen, that there shall be any minor of age for choosing a guardian, "who hath neither father, guardian or mother," the judge of probate within whose district he lives, shall appoint some per-

son for a guardian. *Stat.* 373. ed. 1808. On inspecting the statute, it will appear, that nothing is said concerning mothers; nor do they seem to have been in contemplation. If there be no father, nor guardian before appointed who has the controul and management of the infant's estate, nor master, the court is to appoint a guardian, not merely to superintend the person of the ward, but his property. To this end the person appointed is to give sufficient bond, and to render an account of his guardianship to the court, or to the minor when he shall arrive at full age. From these provisions it is apparent, that the guardian spoken of, in the first clause of the act, was not one who was to have the custody of the person only, but of the estate. To provide for the superintendency of the minor's property, and the right disposition of its avails, was the great object of the law. As the act is silent relative to the mother, and as she had no controul at common law, at least over the minor's estate, it is perfectly clear, that she is not referred to, by the term "guardian," used in the statut*Burk* v. *Phips,* 1 *Root* 487. it is said, by the court, that ter is not the guardian of her son, a minor of sixteen years e, nor in any way entitled to his services ; but that the fathehe natural guardian of the children. And this corresponds w██h the before cited passage from Ch. J. *Swift,* that the mother, except for nurture, is never considered as the natural guardian.

The preceding observations prepare the mind for a right construction of the statute relating to masters and others, on which much stress has been laid. By the second section of this law. (*Stat.* 487. ed. 1808.) it is enacted, "That no person under the government of a parent, guardian or master, shall be capable to make any contract or bargain, which in the law shall be accounted valid, unless the said person be authorized or allowed to contract or bargain, by his or her parent, guardian or master ; in which case such parent, guardian or master shall be bound thereby." It has been argued for the plaintiff, that *Patty Bolles* was under the government of her parent within the meaning of this law ; and that the deed executed by her without authority, was absolutely void. No part of this proposition is admitted.

In the first place, she was not under the *actual* government of her parent. It never could have been the intention of the law to disable an infant from entering into any contract, when distance from her parent, and the actual exigencies of her situa-

*New-London,*
July,
1827.

Kline
*v.*
Beebe.

tion, should require assistance. If sickness and extreme poverty should render support from others necessary, it would be a harsh and illiberal construction of the statute to deprive her of the possibility of relief, except from charity. At common law, it has been decided, that if an infant female live with her mother, she cannot bind herself for necessaries.; (*Bainbridge* v. *Pickering*, 2 *Bla. Rep.* 1325.) but if she reside beyond the sphere of her government, she undoubtedly may. This is a just and necessary principle, applicable to the construction of the statute, and clearly indicating, that the "government" spoken of in the law must be actual as well as legal.

In the next place, it is, at least, questionable, whether *Patty Bolles*, at the execution of the deed in question, was under the *legal* government of her mother, in any sense.

But what is most important, she was not subject to her mother's guardianship and controul, *in respect of the subject matter of her contract*. The law provides, that she shall not contract, unless with the consent of her parent or guardian; and *having been by such parent authorized*. Now, what authority could Mrs. *Bolles* confer on her daughter regarding the disposal of her property? Clearly, none. It is further declared by the statute, that when the parent empowers the infant to contract, he shall be bound thereby. What possible obligation rests, or can rest, on a parent, who has authorized her child to execute a deed of release? And yet, if a deed is a contract within the statute, Mrs. *Bolles*, had it been executed by her authority, would, in some indefineable way, be bound by the engagement.

It is not within the power of a parent, at common law, or by statute, to authorize his minor child to convey away his real estate; and from this consideration and the preceding remarks, it is obvious that the law under discussion relates to executory contracts only. In respect of these, the guardian is competent to give authority, and, if they are not performed, to incur the obligation of fulfilling them.

I am clear, therefore, that at the execution of the deed in question, *Patty Bolles* was not under the government of her parent, within the sense of the statute law; and that such deed is not absolutely void.

2. At common law, this deed is voidable only.

The acts of an infant, for the most part, are only voidable, and not void. When he arrives at maturity, it is, with some exceptions, considered sufficient to allow him the privilege of

New-London,
July,
1827.

Kline
v.
Beebe.

avoiding the acts done, and contracts made, by him, during his infancy, or of availing himself of them, at his discretion. The object of the law is his protection, and not to deprive him of any advantage ; and this cannot be more effectually accomplished, than by permitting him, at maturity, to affirm his contracts, or to break through and avoid them, at his pleasure. This is a sufficient security against imposition. Those who deal with him, know, that they are at his mercy ; and this will annul, or greatly diminish, the temptation to defraud him. If, however, any person should be so hardy as to do it ; yet as at full age, the infant can rescue himself from any inequitable grant or agreement, there appears no great mischief, in the meantime, to suffer the contract to hang *in equilibrio*, and defer any sentence upon it. On the contrary, to hold the contract void, annuls his privilege of judging for himself, when of mature understanding, and may deprive him of a contract highly beneficial. If the act is void, it is a nullity, and obligatory on neither party.

There is some contradiction in the books relative to the precise line of discrimination between those acts of an infant, which require affirmance to render them valid, or disaffirmance to avoid their operation. In this position, however, they generally agree, that wherever the act done *may be* beneficial to the infant, it shall not be deemed void, but voidable. This rule is highly reasonable, most beneficial to the infant, and sanctioned by many judicial opinions. *Zouch* d. *Abbot* & al. v. *Parsons,* 3 *Burr.* 1794. 1808. *Jackson* d. *Wallace* & al. v. *Carpenter,* 11 *Johns. Rep.* 539. *Oliver* & al. v. *Houdlet,* 13 *Mass. Rep.* 237. *Rogers* & ux. v. *Hurd,* 4 *Day* 57. 62. *Maples* v. *Wightman,* 4 *Conn. Rep.* 376. 379. 1 *Swift's Dig.* 56. *Roberts* v. *Wiggins,* 1 *N. Hamp. Rep.* 73. *Wright* v. *Steele,* 2 *N. Hamp. Rep.* 55.

In *Keane* v. *Boycott,* 2 *H. Bla.* 511. Lord Ch. J. *Eyre* has expressed the principle very intelligibly, and with all its practical distinctions. Such contracts as the court can pronounce to be to the infant's prejudice, are void ; others, a more numerous class, of a more uncertain nature as to benefit or prejudice, are voidable, and in the election of the infant to confirm or avoid ; and others still, when for the infant's benefit, as for necessaries, are valid. These were declared, by Judge *Story,* to be founded on solid reason, and to give the subject all the pre-

cision, of which it is susceptible. *United States* v. *Bainbridge,*
1 *Mas n's Rep.* 71. 82.

It has been urged, in the argument, that all deeds of convey-
ance of land, are void, except a feoffment ; and that this diver-
sity is founded on the *solemnity* of the conveyance. It is not
true, that the solemnity referred to, is greater than that which
attends every legal deed in this state ; and, as was said, by Lord
*Mansfield,* in *Zouch* d. *Abbot* & al. v. *Parsons,* 3 *Burr.* 1794.
there is no difference, in this respect, between a feoffment and
deeds which convey an interest. " The delivery of the deed,"
said he, " must be in the presence of witnesses, as much as
livery of seisin. The ceremony is as solemn. The presump-
tion that the witnesses would not attest, if they saw him an in-
fant, holds equally in both." To this I would subjoin the ob-
servation, that in this state, the registration of all deeds of land,
gives a permanent notoriety of our conveyances, to which there
is no parallel in livery of seisin, before either a few or many
witnesses. As far back as the reign of *Edward* VI., *Perkins,*
in his treatise on *Conveyancing,* "wittily and learnedly com-
posed," as was said, by Sir *Edward Coke,* in his preface to 10
*Rep.,* laid down the following rule : " That all such gifts, grants
or deeds, made by an infant, which do not take effect, by de-
livery of his hand, are void ; but such gifts, &c., which take
effect, by delivery of his own hand, are voidable." *Sect.* 12. 13.
This rule was acknowledged in *Zouch* d. *Abbot* & al. v. *Parsons,*
and in *Conroe* v. *Birdsall,* 1 *Johns. Ca.* 127. ; and has been re-
cognized in many other cases. *Littleton* says : " If before the
age of twenty-one, any *deed* or feoffment, grant, *release,* &c. be
made, (by an infant) all serve for nothing, and may be avoided."
*Sect.* 259. It is observable, that grants, *releases* and deeds of
every description, are here classed with feoffments ; and they
are all declared not to be void, but *voidable.* In 2 *Inst.* 673. it
is said, " that a bargain and sale enrolled by an infant, *he may
avoid when he will."* Whether leases for years made by an in-
fant, without the reservation of rent, are voidable or void, is a
vexed question ; but if rent is reserved, they are voidable only.
*Co. Litt.* 45. *b.* 308. *a.* 3 *Mod.* 307. 3 *P. Wms.* 210. 3 *Burr.*
1806.

The same observation is equally true with respect to deeds
of partition, (*Co. Litt.* 171.) of exchange,*(Co. Litt.* 51. *b.*) and
of grant. *Litt. sect.* 259. They are not void, but only voidable.
In *Zouch* d. *Abbot* v. *Parsons,* an infant's conveyance by *lease*

*and release,* was held voidable, and not void ; and this determi-
nation, never contradicted, and often recognized, has settled the
law on the subject in question. Until the present case, that de-
cision was universally considered as law. To this effect are
the determinations in the state of *New-York,* (*Conroe* v. *Birds-
all,* 1 *Johns. Ca.* 127.) of *Massachusetts,* (*Worcester* v. *Eaton,* 13
*Mass. Rep.* 371.) and of *Maine. Hubbard* & al. v. *Cummings,*
1 *Greenl.* 11. In the *Commentaries on American Law,* (*vol.* 2.
*p.* 193.) it is said, by the learned author : " The doctrine of the
case of *Zouch* d. *Abbot* v. *Parsons,* has been recognized as law
in this country, and it is not now to be shaken." And equally
pointed are the observations of the late Ch. J. *Swift,* in his
*Digest, vol.* 1. *p.* 55.

The deed in question, although in the form of a release, by
the law of *Connecticut,* has the operation of a grant and con-
veyance, without warranty. 1 *Swift's Dig.* 133. It was exe-
cuted for a valuable consideration ; has the semblance of ben-
efit ; and took effect, by the delivery of the infant's hand. It
follows, that it was not void, but voidable only.

3. Has the deed in question been affirmed ?

*Patty Bolles* arrived at full age more than a year before her
intermarriage with the plaintiff, and about three years after the
deed was executed. She died in the year 1815; and after this
event,the plaintiff suffered ten years to elapse before he brought
his action. During all this period, there was neither expres-
sion nor act tending to a disaffirmance of the deed in question.
The defendant was in possession of the land ; the promissory
note, given in consideration of the deed, was retained by the
plaintiff; and the service of the plaintiff's writ, was the first
act or attempt to annul the conveyance.

All avoidable acts may be affirmed, by an infant, when he
arrives at maturity, or he may disaffirm them.

There are three modes of affirmance.

The first and most obvious, is by an express ratification. 4
*Leon.* 4.

The second is, by the performance of an act or acts, from
which an affirmance may reasonably be implied. 1 *Pow.* on
*Cont.* 55.

A ratification of the contract has often been inferred from
the silence of the infant, after his arrival at full age, coupled
with his retaining possession of the consideration, or availing
himself, in any manner, of his conveyance ; such as his recep-

*New-London,
July,
1827.*

*Kline
v.
Beebe.*

*New-London,*
July,
1827.

Kline
*v.*
Beebe.

tion of rent under a voidable lease ; (*Litt. sect.* 258. *Morgan* v. *Morgan,* 1 *Atk.* 489.) the remaining in possession of lands leased or conveyed to him ; (*Evelyn* v. *Chichester,* 3 *Burr.* 1717. *Ketsey's* case, *Cro. Jac.* 320. *Com. Dig. tit.* Enfant. C.) receiving interest on a contract; (*Franklin* v. *Thornebury,* 1 *Vern.* 132.) the occupancy of land taken in exchange for other land; (*Cecil* & al. v. *Salisbury,* 2 *Vern.* 225. *Co. Litt.* 51. *b.*) and any other act indicating an intention to affirm. And in the same manner, a disaffirmance will be implied, by the performance of an act, evincing an election to disaffirm. *Jackson* d. *Wallace* & al. v. *Carpenter,* 11 *Johns. Rep.* 539. *Jackson* d. *Brayton* & al. v. *Burchin,* 14 *Johns. Rep.* 124.

The omission to disaffirm a contract within a reasonable time, has been held sufficient evidence of a ratification. In *Holmes* v. *Blogg,* 8 *Taun.* 35. 39, 40. it was observed, by *Dallas,* J. (afterwards Ch. J.) " The infant is bound to give notice of the disaffirmance of a voidable contract, in reasonable time ; and if the case before the court were that simple case, I should be disposed to hold, that as the infant had not given express notice of disaffirmance, *within four months,* he had not given notice of disaffirmance in reasonable time. This principle is recommended, by its justice and general convenience.— It is unjust, that the infant, after his arrival at maturity, and the lapse of a reasonable time, should hold the scales in his hands, and decide as future circumstances should incline. In the mean time, the purchaser under him is at a stand, and incapable of making any necessary and permanent improvement on his estate. Of this opinion is the author of *Commentaries on American Law.* " His confirmation," said that learned jurist, " of the act or deed of his infancy, may be justly inferred against him, after he has been of age for a reasonable time, either from his positive acts in favour of the contract, or from his *tacit assent* under circumstances not to excuse his silence.' 2 *Kent's Comm.* 195. Acquiescence merely, for an unreasonable time, is an act, that denotes an intent not to rescind the contract. 1 *Swift's Dig.* 58.

The deed in question has been ratified, by every implied mode of affirmance. The consideration note was held, by *Patty Bolles,* a year after her arrival at full age, and before her marriage ; and by the plaintiff has been held ever since. During all this period, until the commencement of the plaintiff's action, a profound silence was observed, relative to the dis-

affirmance of the contract; and the defendant was permitted <span>*New-London,*</span>
to remain in the unquestioned occupation of the land. These
acts imply an affirmance of the deed, not unlike the holding
possession of land leased or exchanged, and authorized the
same inference. Besides, the omission to disaffirm alone, for
eleven years, a period almost sufficient to give a title by pos-
session, is an acquiescence in the conveyance amounting to a
tacit affirmance.

*New-London,*
July,
1827.

Kline
*v.*
Beebe.

BRAINARD, LANMAN and DAGGETT, Js. were of the same
opinion.

PETERS, J. Whether the deed of an infant be void or voida-
ble, has been a *questio vexata* from the days of the year-books.
*Perk. sect.* 13, 14. 1 *Selw. N. P.* 586. And it seems likely
to continue so; though it has been decided at least once, by
this Court; (*Rogers* & ux. v. *Hurd,* 4 *Day* 57.) and much of-
tener, by the *English* courts, but was considered as an open,
debateable point, in *Holmes* v. *Blogg,* 8 *Taun.* 35. in 1817; and
we have now gone over the ground again, in my opinion, to
very little purpose. According to a late learned commentator,
(*Bingham on Infancy* 45.) upon a review of all the cases, the
only safe criterion is, that acts capable of being ratified, are
voidable, and acts incapable of being ratified, are absolutely
void. And according to a later and more learned commenta-
tor, when we attempt to ascertain from the books the precise
line of distinction between void and voidable acts, we meet
with much contradiction and confusion. 2 *Kent's Comm.* 191.

But whatever may be the common law on this subject, the
capacity of our citizens, and the conveyance of their real es-
tate, are not regulated by that law. By statute, it is enacted,
" that all persons of the age of twenty-one years, of right un-
derstanding and memory, whether excommunicated or other,
not otherwise legally incapable, shall have full power, authori-
ty and liberty to make their wills and testaments, and all other
lawful alienations of their lands and other estates." *Stat.* 42.
ed. 1808. This certainly implies, that infants have no such
power.

But admitting that the deed was voidable only, no express
ratification is claimed. The grantor was *sui juris* one year
only before she died, during the existence of the particular es-
tate, and when she had no right of entry. In *Rogers & ux. v.*

*New-London.*
July,
1827.

Kline
*v.*
Beebe.

*Hurd,* 4 *Day* 57. where the wife, while sole, and an infant, had executed a quit-claim deed of her land jointly with her guardian, and she, after she came of age, before her marriage, and both the plaintiffs afterwards, acquiesced in her deed, and expressly affirmed the same, it was unanimously decided, by this Court, that " the same evidence ought to be required of the confirmation of a voidable contract, after full age, as of the execution of a new one." The requisites of a deed are prescribed by statute, (*Stat.* 652. ed. 1808.) of which acknowledgment and recording are essential parts, and cannot be proved by parol, or acquiescence.

I advise a new trial.

New trial not to be granted.